## Price et al. v. Price et al.

Oct. 26, 1943.

As Modified on Denial of Rehearing

Dec. 17, 1943.

B. J. Bethurum for appellants.

John S. Cooper and Gladstone Wesley for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The case involves the question of ownership of securities contained in a safe-deposit box in the Farmers National Bank of Somerset, shortly after the death of Dr. William M. Price, which occurred in the latter part of the year 1941. Appellee, Nettie Price, Dr. Price's widow, claims ownership of the securities, whilst appellants, the other heirs, claim they were owned by Dr. Price in his lifetime. The appraisers of the estate reported to the Court that the securities were found in the lock box of Mrs. Price, and that she at that time claimed to be the owner of them. Appellants filed exceptions to the appraisers' report, which were overruled. Exceptions were then filed in the Pulaski Circuit Court, and the Chancellor, after hearing the testimony, likewise overruled the exceptions and entered judgment decreeing that the securities were not a part of the personal estate of Dr. Price. The soundness of this part of the judgment is the sole question before us.

After the death of Dr. Price, his widow delivered a key to lock box number 16 in the Farmers National Bank to the County Attorney, who, accompanied by the appraisers, the widow, and several other witnesses, opened the box, and therein found securities amounting to many thousands of dollars. It is admitted that Dr. Price owned all of the securities contained in this box. Failing to find a will in Dr. Price's box, Mrs. Price suggested that the deceased might have placed his will in her own box; whereupon, she went to her home and returned with the key to lock box number 148. The box was opened, but no will was found. The box contained an envelope which enclosed the securities in question. On the envelope were written the words "Mrs. Nettie Price." The Bank record at that time did not show in whose name the box was listed, although an officer of the Bank at that time made a record of the box number in the registry book opposite the name of Dr. Price. A certificate for four and one-half (4½) shares of the capital stock of Somerset Chevrolet Company was shown on its face to have been issued to Mrs. Price; all the other securities were coupon bonds payable to bearer. Mrs. Bettie A. May, an aunt of Mrs. Price, testified that she lived close to the Prices, saw them often, and that for three or four years prior to the death of Dr. Price, she was in their home three or four times a day. That she had heard the Prices frequently discuss their financial and business affairs; that she had seen the key to box number 148 before Dr. Price's death; that she saw Dr. Price give the key to Mrs. Price, at which time he told her where to put it, and made the statement to her that the key was hers. That on one occasion she went, in company with Dr. Price and Mrs. Price, to the Bank at Somerset; that Mrs. Price handed the key to Dr. Price, who opened the box and clipped coupons from some of the bonds, and returned the key to his wife. He forthwith delivered the coupons to Mrs. Price, who deposited them to the credit of her account in the Bank. That she was familiar with the place where the key was kept in the Price home, which was a drawer in a safe containing Mrs. Price's personal belongings. Cli McGriff testified that Dr. Price told McGriff's wife, in his presence, that both Mrs. Price and he had safe-deposit boxes, and advised Mrs. McGriff to invest money on deposit in the Bank in government bonds and place them in a safe-deposit box of her own.

Charles McGriff, a nephew of Mrs. Price, testified that the key which opened box number 16 was on Dr. Price's key-ring, and Mrs. Price had to return to her home to get the key for the purpose of opening box number 148. Mrs. Price did not testify, because of the inhibition contained in Section 606, Subsection 2 of the Civil Code of Practice.

Dr. Price was Vice-President of the Bank containing the safe-deposit boxes. The President of the Bank testified that on the date he gave his testimony the record of the Bank showed box number 148 to be in Dr. Price's name. There is nothing in his testimony to refute the evidence that that record was made after the death of Dr. Price, and on the occasion the County Attorney opened the boxes, except the statement that he personally did not make the record at that time. The County Attorney, Russell Jones, was hazy in his recollection of what occurred upon examining the contents of the boxes but he "believed" he opened two boxes on that occasion and made a list of their contents. He stated, "to the best of his knowledge," the boxes were recorded in the name of Dr. Price. Appellants showed by the County Court Clerk of Pulaski County that Dr. Price listed intangible securities in the amount of Fifteen Thousand Sixteen Dollars ($15,016) for taxation as of July 1, 1939; that Mrs. Price listed no property for taxation in that year. That Dr. Price listed intangible personal property in the amount of Seventeen Thousand Eight Hundred Seventeen Dollars ($17,817) as of July 1, 1940, and in that year Mrs. Price listed intangible personal property in the amount of Thirteen Hundred Seventy-Five Dollars ($1375).

We are asked from the testimony of the County Attorney, the Bank President, and the County Court Clerk, to reverse the judgment because this evidence conclusively shows that Dr. Price was the owner of the securities, and that appellees failed to establish by the evidence the elements necessary to prove a gift of the securities inter vivos. This testimony falls far short of establishing ownership at any time in Dr. Price. The testimony does not contradict the positive testimony that the contents of box number 148 were owned by Mrs. Price long before the death of her husband, and that she was in the exclusive possession of the key for many years prior to his death, and that she exercised absolute dominion and control over the property at all

times appearing in the evidence. No testimony was offered concerning who purchased the securities, and probably the only one living who knew that fact was the widow, who, by law, was forbidden to testify in the case. No contention was ever made by Mrs. Price that her husband had delivered the securities to her as a gift inter vivos, her contention being from the moment she produced the key to the box that the contents were hers, without making any statement whatever about how she acquired the property. The evidence of the Bank President that, at the time he testified in the case, the Bank record showed the box to be listed opposite Dr. Price's name is of no probative value, because it was positively shown that one such record was made on the date the lock box was opened after the death of Dr. Price. The assessor's books did not show what stocks were contained in the listing of Dr. Price in the years 1939 and 1940, or of Mrs. Price in 1940; and, while it is asserted in the brief for appellants that the listing made by Mrs. Price as of July 1, 1940 was not made until after the controversy herein arose, there is no evidence of this fact in the record. Nor does proof of the fact that in her assessment list for 1940 Mrs. Price valued her securities at Thirteen Hundred Seventy-Five Dollars ($1375), and that the appraisers valued the securities claimed by her at Eight Thousand Dollars ($8,000), present any evidence of probative value that the securities in question were owned by Dr. Price, or, for that matter, by Mrs. Price at the time of the listing. To conclude from the evidence that Dr. Price ever owned the securities contained in box number 148 would be mere speculation on our part, in the face of positive and direct proof to the contrary.

Since the judgment of the Chancellor conforms to the views herein expressed, it is affirmed.